UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOURDES DEL RIO, *et al.*, | CASE NO. C17-0690-JCC |
| Plaintiffs, | ORDER |
| v. | |
| IPECO HOLDINGS, LTD., *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendant Ipeco Holdings, Ltd.'s ("Ipeco") motion to dismiss (Dkt. No. 66) and Plaintiffs' motion for an award of costs and fees (Dkt. No. 67). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby DENIES Ipeco's motion to dismiss (Dkt. No. 66) and DENIES Plaintiffs' motion for an award of costs and fees (Dkt. No. 67) for the reasons explained herein.

## I. BACKGROUND

### A. Factual Background

This is a product liability action brought by a group of American Airlines crewmembers and their spouses. (Dkt. No. 67 at 6.) Plaintiffs allege that they endured a near-death experience while on a flight from New York to Argentina caused by a defective first-officer's seat (the "Subject Seat") designed and manufactured by Ipeco. (Dkt. No. 1 at 8–10.)

On October 3, 2014, American Airlines Flight 953 departed JFK International Airport in New York bound for Buenos Aires, Argentina. (*Id.* at 8.) Just over 100 miles north of Buenos Aires, the plane experienced a sudden negative g-force descent, causing passengers and crewmembers to hit the cabin ceiling as well as other inflight disorder. (*Id.* at 9.) Plaintiffs allege this unexpected descent occurred because a switch on the Subject Seat caused it to be moved into the full-forward position leading to an inadvertent disengagement of the plane's autopilot function. (*Id.* at 8.) Plaintiffs further allege that design and manufacturing defects with the Subject Seat and its components caused this unsafe condition. (*Id.*) The pilots were eventually able to overcome the emergency and safely land the plane in Buenos Aires. (*Id.* at 10.) Plaintiffs allege physical, mental, and emotional injuries as a result of the inflight incident. (*Id.*)

The subject plane was a Boeing 777-200, manufactured by Defendant the Boeing Company ("Boeing"). (*Id.* at 8.) The Subject Seat was designed and manufactured by Ipeco at its facilities in the United Kingdom. (Dkt. No. 66-2 at 2.) Post-production, Ipeco is alleged to have shipped the seat to Boeing at its manufacturing plant in Everett, Washington. (Dkt. No. 67-7 at 2.) Boeing installed the seat during the manufacturing of the subject plane, which it then sold to American Airlines. (Dkt. No. 67-5 at 1.)

### B. Procedural Background

Plaintiffs initially brought suit in the Central District of California against Boeing and Ipeco's U.S. subsidiary, Ipeco Inc. ("Ipeco USA"). (Dkt. Nos. 67-1, 67-4, 66-2 at 3.) Plaintiffs voluntarily dismissed the lawsuit when they learned that Ipeco USA was not a proper party because it did not manufacture the Subject Seat. (Dkt. No. 67 at 7.) Plaintiffs subsequently refiled their lawsuit against Boeing and Ipeco in the Eastern District of New York. (*Id.*) Plaintiffs chose New York because Boeing had offices in the state, the flight had departed from New York, and Plaintiffs believed, incorrectly, that Ipeco had shipped the Subject Seat to New York. (*Id.*)

Ipeco moved to dismiss the case for lack of personal jurisdiction. (Dkt. No. 33.) After the New York Court, Honorable Carol B. Amon, ordered jurisdictional discovery, Plaintiffs learned

that Ipeco had shipped the Subject Seat from Great Britain to Washington. (Dkt. No. 67-7 at 8.) Rather than respond to Ipeco's motion to dismiss, Plaintiffs asked Judge Amon to transfer the case to the Western District of Washington. (Dkt. Nos. 33, 67-3 at 3.) After a hearing, Judge Amon granted Plaintiffs' motion to transfer the case to this Court. (Dkt. Nos. 42, 67-3 at 28.)

This Court was assigned the case on May 2, 2017. (Dkt. No. 43.) On June 6, 2017, Ipeco filed an answer to Plaintiffs' complaint. (Dkt. No. 63.) On November 11, 2017, the parties appeared before the Court for a status conference. (Dkt. No. 65.) On December 14, 2017, Ipeco filed this motion to dismiss for lack of personal jurisdiction. (Dkt. No. 66.)

## II. DISCUSSION

### A. Rule 12(b)(2) Motion for Lack of Personal Jurisdiction

When a defendant moves to dismiss a case pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction exists. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (citation omitted). If a 12(b)(2) motion is supported only by written materials, such as the pleadings and affidavits, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id*. The Court must resolve conflicts in the documentary evidence in favor of the plaintiff. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

At the outset, the Court must resolve a factual dispute regarding Ipeco's contacts with Washington. The parties present conflicting evidence about whether Ipeco shipped the Subject Seat from Great Britain to Washington or whether Boeing arranged for shipment. (*Compare* Dkt. No. 66-2 at 2, *with* Dkt. Nos. 67-3, 67-4, 67-6, 67-7.) Ipeco included with its motion a declaration from its Finance Director Sara Nash, who stated the following regarding the shipment of the Subject Seat:

> Ipeco Holdings made the Subject Seat available to Boeing for pickup at Ipeco Holdings' facilities in the United Kingdom, and shipment of the Subject Seat from the United Kingdom to Boeing's facilities in Washington State was arranged for by

Boeing pursuant to Boeing's shipping instructions and Boeing's choice of mode of transportation.

(Dkt. No. 66-2 at 2.) Based on Nash's declaration, Ipeco argues that it was not involved in shipping the Subject Seat to Washington. (Dkt. No. 66 at 14.) Plaintiffs answer with significant evidence that Ipeco shipped—or was at least involved in shipping—the Subject Seat.

First, Plaintiffs point to the seat's sales invoice. (Dkt. No. 67-7.) The Ipeco-generated invoice indicates that the seat was to be shipped to Boeing's plant in Everett, Washington and lists the method of shipment. (*Id.*) Next, Plaintiffs point to two declarations filed by Ipeco USA in the prior lawsuit in California. (Dkt. Nos. 67-4, 67-6.) One is from Ipeco USA's General Manager who stated "Ipeco UK sells and ships all new and replacement Flight Deck Seats for use on Boeing commercial aircraft directly to Boeing . . . ." (Dkt. No. 67-4 at 3.) The second is from Boeing's procurement agent for Ipeco flight deck seats who stated "Boeing orders the seats directly from IPECO Holdings, Ltd. in the United Kingdom; thereafter IPECO Holdings, Ltd. ships the seats directly from the United Kingdom to Boeing in Washington." (Dkt. No. 67-6 at 3.)

Finally, Plaintiffs point to a statement made by Ipeco's counsel during the hearing before Judge Amon to determine whether the case should be transferred to this Court. Ipeco's counsel stated on the record: "We should never have been in the Eastern District of New York when in September of 2016, we gave them a declaration that said Ipeco Holdings ships seats directly from the United Kingdom to Boeing in Washington." (Dkt. No. 67-3 at 11.)

Given this competing evidence, the Court must resolve the dispute in favor of the Plaintiffs. The Court concludes for the purposes of this motion that Ipeco shipped the Subject Seat to Washington.[1]

//

---

[1] The parties also dispute whether Ipeco operates a repair facility in Washington. (Dkt. No. 70 at 15.) The Court chooses not to resolve this dispute because it would not influence its ruling on personal jurisdiction.

**B.     Plaintiffs' Theories of Personal Jurisdiction**

Ipeco asserts that the Court lacks personal jurisdiction because the company has only minimal contacts with Washington that are unrelated to the claims in this lawsuit. (Dkt. No. 66 at 10.) Plaintiffs oppose the motion on three grounds. First, they argue Ipeco consented to personal jurisdiction based on its litigation conduct. (Dkt. No. 67 at 12.) Second, Plaintiffs argue the issue of personal jurisdiction was mooted when Judge Amon transferred the case to this Court. (*Id*. at 14.) Third, Plaintiffs assert this Court has specific personal jurisdiction over Ipeco because the company shipped the Subject Seat to Boeing's facility in Washington. (*Id*. at 18.)

　　　　　　　　　　　　1. Consent

There are several ways in which defendants can expressly or impliedly consent to personal jurisdiction. *See, e.g.*, *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005) (agreeing to a forum selection clause); S*chnabel v. Lui*, 302 F.3d 1023, 1037–38 n. 5 (9th Cir. 2002) (filing a counterclaim or cross claim). Plaintiffs argue Ipeco expressly consented to personal jurisdiction because during the hearing in the Eastern District of New York its counsel stated that jurisdiction was proper in Washington. (Dkt. No. 67 at 13.) Ipeco's counsel said: "I mean, I understand they filed in California against the wrong entity. We told them then that Washington was an appropriate jurisdiction, but they filed in New York." (Dkt. No. 67-3 at 22.) Plaintiffs also assert Ipeco impliedly consented to this Court's jurisdiction because it participated in discovery and attended a status conference before filing this motion. (Dkt. No. 67 at 13.)[2]

The Court does not conclude that Ipeco expressly or impliedly consented to personal jurisdiction. Counsel's statement on the record that "Washington was an appropriate jurisdiction," was not an unambiguous waiver of personal jurisdiction. First, counsel never used

---

[2] Plaintiffs also cite to Revised Code of Washington section 26.50.240 for the proposition that Ipeco consented to personal jurisdiction when it filed a general appearance in this case. (Dkt. No. 67 at 12.) That statutory provision applies to the issuance of domestic violence protection orders and is wholly inapplicable to this case.

the term "personal jurisdiction." Second, his statement was made during a hearing to determine whether venue should be transferred from New York to Washington. With this context in mind, counsel's use of the word "jurisdiction" could easily have been meant as "venue."

Moreover, Ipeco's actions do not support a finding that it waived the issue of personal jurisdiction. In its answer to Plaintiffs' complaint, Ipeco timely asserted that this Court lacked personal jurisdiction. (Dkt. No. 63.) The conduct that Plaintiffs suggest indicate waiver—Ipeco's participation in discovery and attendance at a status conference—is not the kind of affirmative action sufficient to establish personal jurisdiction. *See S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) ("where a party has filed a timely and unambiguous objection to the court's jurisdiction, we have concluded that the party has not consented to jurisdiction."); *cf. Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (waiver occurs if defendant fails to challenge the defect in a preliminary motion or responsive pleading.) For those reasons, the Court finds that Ipeco has not consented to personal jurisdiction.

### 2. Mootness

Plaintiffs argue that Judge Amon adjudicated the issue of personal jurisdiction when she transferred the case to the Western District of Washington. The Court disagrees. Where venue is improper, a district court can transfer the case to a district or division "in which it could have been brought." 28 U.S.C. § 1406. A transferee court is not precluded from considering a motion to dismiss for lack of personal jurisdiction where the transfer order addresses only venue. *Hoffman v. Blaski*, 363 U.S. 335, 342 n. 9 (1960); *Reddy v. MedQuist, Inc.*, 467 F. App'x 647, 648 (9th Cir. 2012).

Judge Amon's transfer order was silent as to personal jurisdiction. The transfer order reads in its entirety: "Pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), the Court transfers this action to the United States District Court for the Western District of Washington." (Dkt. No. 42.) Nor during the hearing did Judge Amon state, as Plaintiffs suggest, that "jurisdictional matters were rendered moot because the case was to be transferred to the proper jurisdiction." (Dkt. No.

67 at 16.) Judge Amon never once used the term "personal jurisdiction," and the entire hearing was based on Plaintiffs' motion to transfer venue. (*See generally* Dkt. No. 67-3.) Judge Amon's order transferring venue does not preclude this Court from considering Ipeco's motion to dismiss for lack of personal jurisdiction.

### 3. Specific Jurisdiction

A district court's exercise of personal jurisdiction must comport with applicable statutes and constitutional due process. *See Ross*, 504 F.3d at 1138. Where no applicable federal statute governs personal jurisdiction, a district court applies the law of the state in which it sits. *See* Fed. R. Civ P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Washington's long-arm statute permits the exercise of jurisdiction to the full extent of the Constitution's Due Process clause. *See* Wash. Rev. Code § 4.28.185; *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 79–80 (Wash. 1989) (citation omitted).

Constitutional due process requires that a defendant have at least "minimum contacts" with the relevant forum such that a court's exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Under the due process analysis, a defendant may be subject to either general or specific personal jurisdiction." *Easter v. American West Fin.*, 381 F.3d 948, 960 (9th Cir. 2004) (citing *Helicopteros Nacionales de Colombia*, *S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984)). Since neither party asserts that general jurisdiction applies in this case, the Court need only decide whether it can exercise specific jurisdiction over Ipeco.

The Ninth Circuit uses the following three-part test for specific jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* If met, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

### *(i) Purposeful Availment or Direction*

The first prong of the specific jurisdiction test uses a purposeful availment or purposeful direction standard. The Supreme Court has noted that in product liability cases, "it is the defendant's purposeful availment that makes jurisdiction consistent with traditional notions of fair play and substantial justice." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). The purposeful availment standard examines whether a non-resident defendant's connections to the forum are strong enough such that it should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The requirement is meant to prevent a defendant from being "haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts." *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)) (internal quotations omitted).

Here, Ipeco purposefully availed itself of the rights and privileges of doing business in Washington by entering into an agreement to sell and ship flight deck seats to Boeing's Everett plant. Ipeco admits that it entered into multiple agreements with Boeing to provide it with flight deck seats—of which the Subject Seat was one—for installation at its facility in Washington.[3] (Dkt. No. 66-2 at 2.) The sale of the Subject Seat was far from a fortuitous or random contact with Washington—Ipeco entered the agreements with Boeing in 1991 and the Subject Seat was not purchased until 2000. (*Id.*) Indeed, Ipeco's commercial relationship with Boeing's facility in

---

[3] While it is not entirely clear from the record, it appears Ipeco and Boeing had some form of a requirements contract to provide seats for the Boeing 777. (Dkt. No. 66-2 at 2.)

Washington was continuous for at least a decade. The invoice for the Subject Seat shows that Ipeco billed Boeing at an address in Seattle and shipped the seat to Everett. (Dkt. No. 67-7 at 3.)

Ipeco uses the so-called "stream of commerce" doctrine to argue it could not have anticipated being sued in Washington. (Dkt. No. 66 at 13.) Ipeco's argument is unavailing. The stream of commerce cases involve situations where a non-resident defendant sells or distributes its product into the United States, which ends up causing harm in a forum state where the defendant has no connection. *See, e.g.*, *Nicastro*, 564 U.S. at 873 (no personal jurisdiction where foreign manufacturer sold its machines to the United States but whose only connection to forum state was that the defective machine ended up there through national distribution network); *World-Wide Volkswagen*, 444 U.S. at 297.

In this case, the Subject Seat did not find its way into Washington through some random or attenuated circumstance. It was directly sent there by Ipeco pursuant to a long-running supply contract with Boeing. This ongoing connection is the very reason Ipeco could anticipate one day having to defend a lawsuit in Washington if there was something wrong with one of its flight deck seats. As the Supreme Court noted in *World-Wide Volkswagon*, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297. Ipeco's contacts with Washington made it foreseeable that it might have to defend against a lawsuit in that state.

*(ii) Arising out of Forum-Related Activities*

The Ninth Circuit uses a "but for" causation test to determine whether a plaintiff's claim arises out of or relates to a defendant's contacts with the forum state. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). In this case, the pertinent question is whether Plaintiffs would not have been injured, but for Ipeco's contact with Washington. *See id.* The Court concludes that the answer is yes.

Plaintiffs allege that the Subject Seat designed and manufactured by Ipeco was defective, and that its defects caused them harm during a flight from New York to Argentina. (Dkt. No. 1 at 8–9.) Although the Subject Seat was designed and manufactured in Great Britain, Ipeco sold and shipped it to Boeing in Washington, where it was installed in the plane involved in Plaintiffs' claim. (Dkt. Nos. 66-2, 67-5, 67-7.) Ipeco's decision to sell and ship the Subject Seat to Boeing in Washington represents one of the first links in the chain of causation leading directly to Plaintiffs' alleged injury. The Court has no trouble concluding that Plaintiffs would not have suffered their alleged injuries "but for" Ipeco selling and shipping the Subject Seat to Washington. *See Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) ("A single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state.").

Ipeco argues that "settled constitutional principles foreclose specific jurisdiction under the circumstances where neither the defendant's relevant activities nor the alleged harm resulting therefrom occurred in the forum State." (Dkt. No. 66 at 14) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (U.S. 2011)). The conclusions Ipeco draws from *Goodyear* are overstated. *Goodyear* is a case dealing with general personal jurisdiction, not specific personal jurisdiction. *Goodyear*, 564 U.S. at 926. The Supreme Court only discussed specific jurisdiction in *Goodyear* to explain that evidence supporting specific jurisdiction does not necessarily establish general jurisdiction. *Id.* at 927. Such analysis is irrelevant to this case.

Nor does the Court agree with Ipeco that the Supreme Court's recent holding in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 582 U.S.___137 S. Ct. 1773 (2017), forecloses specific jurisdiction. In *Bristol-Myers Squibb*, the Court reversed the California State Supreme Court's determination that California had specific personal jurisdiction over a non-resident pharmaceutical company, where its contacts with the state were completely unrelated to the claims of a group of non-California plaintiffs. (*Id.* at 1782–83.) The Court emphasized that there was not an adequate link between the forum state and the plaintiffs'

1 claims, noting "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id*. at 1781. In other words, neither the defendant's product that allegedly harmed the plaintiffs, nor the plaintiffs themselves had any relationship to the forum state.

That is not the situation in this case. The Subject Seat that allegedly caused the Plaintiffs harm was sent by Ipeco to Boeing in Washington, where it was installed in the subject plane. While the Plaintiffs are not Washington residents, and the harm occurred outside the state, Ipeco's activities in Washington are directly related to the Plaintiffs' claims. For these reasons, the Court concludes that Plaintiffs' claims arise out of Ipeco's contacts with Washington.

*(iii) Fair Play and Substantial Justice*

Since Plaintiffs have met the first two prongs of the *Schwarzenegger* test, the burden shifts to Ipeco to demonstrate why it would be unreasonable for the Court to exercise personal jurisdiction. To determine reasonableness, courts weigh seven factors: "(1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993). All of the factors must be weighed, but none is dispositive. *Id.*

*1. Purposeful Injection:* Ipeco purposefully injected itself into the forum by contracting with Boeing to sell and ship flight deck seats to Boeing's facility in Washington. As previously noted, Ipeco has maintained this business relationship with Boeing, and by extension Washington, for over a decade. *See supra*, Part II.B.3.i. As Ipeco points out, however, the company has no other contacts with Washington: it has no facilities, employees, bank accounts, or licenses in the state. (Dkt. No. 66 at 25.) The first factor is neutral.

*2. Burden of Litigating:* Courts are to examine the burden on the defendant "in light of the corresponding burden on the plaintiff." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986). Ipeco is an international corporation with a U.S. subsidiary headquartered in California and operations around the globe. (*See* Dkt. Nos. 66-2 at 2, 67-9 at 2.) Plaintiffs, conversely, are individuals who all reside outside of Washington. (Dkt. No. 1 at 2–3.) Ipeco has already appeared in three different U.S. jurisdictions to defend against this lawsuit, and the Court does not perceive an unreasonable burden in having to litigate in Washington. Moreover, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Given its greater resources and connections to the U.S., Ipeco faces less of a burden than Plaintiffs to litigate in Washington. The second factor weighs in favor of personal jurisdiction.

*3. Conflict with Sovereignty of Defendant's State:* Courts should be cautious in extending personal jurisdiction over foreign corporations. *See Asahi Metal Industries v. Superior Court of Solano County*, 480 U.S. 102, 107 (1987). Since Ipeco is incorporated and registered in the United Kingdom, this Court's exercise of jurisdiction would necessarily conflict with that country's sovereignty. While this concern is lessened by Ipeco having a U.S. subsidiary and actively selling its products in the U.S., the third factor weighs against personal jurisdiction.

*4. Forum State's Interest in Adjudicating the Suit:* Forum states have a strong interest in protecting their citizens from defective products manufactured by non-resident corporations. *See Brand*, 796 F.2d at 1075. Here, Washington's interest in the litigation is not as strong because all Plaintiffs are non-residents. (Dkt. No. 1 at 2–3.) Washington's interest is "at most, an interest in assuring that out-of-state residents do not knowingly allow defective products to be sold for delivery in [Washington]." *Id*. That said, Boeing's large commercial presence in Washington and Ipeco's ongoing contractual relationship with the manufacturer, give Washington a greater interest in adjudicating this lawsuit. The fourth factor is neutral.

*5. Efficient Judicial Resolution:* Normally, the most efficient forum is the site where the injury occurred or the evidence is located. *Pac. Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1331 (9th Cir. 1985). The location of the injury in this case—the airspace above Argentina—does not provide a practical forum for any of the parties. Although the Subject Seat was designed and manufactured in the United Kingdom, it was shipped to and installed by Boeing in Washington. Boeing is also a defendant, and it would not be in the interest of judicial economy for Plaintiffs to maintain separate lawsuits in different jurisdictions. Ipeco also did not object when the case was transferred to this Court from the Eastern District of New York and even suggested Washington was an appropriate venue. (Dkt. No. 67-3 at 15) ("The case should have been filed in Washington from the start or at the very least after the case was voluntarily dismissed out of California.") This fifth factor weighs in favor of personal jurisdiction.

*6. Convenience and Effectiveness of Relief for Plaintiff:* Washington represents a convenient forum for Plaintiffs to obtain complete relief. Plaintiffs allege that their harm was caused by both Ipeco and Boeing. It would certainly be inefficient and costly for Plaintiffs to litigate their claims—which arise out of the same incident—in both Washington and the United Kingdom. The Court also notes that Washington is the third U.S. jurisdiction in which Plaintiffs have attempted to bring their lawsuit. (*See* Dkt. No. 67 at 7–10.) Continued delay could prevent Plaintiffs from obtaining relief. The sixth factor weighs in favor of personal jurisdiction.

*7. Existence of Alternative Forum:* "The plaintiff bears the burden of proving the unavailability of an alternative forum." *Core-Vent Corp.*, 11 F.3d at 1490. Plaintiffs have not demonstrated that they are without an alternative forum to bring their claims. In particular, Plaintiffs have not shown why their claims could not be brought against Ipeco in Great Britain. While that course of action would not be efficient or convenient for Plaintiffs, that does not mean they are without an alternative forum. This factor weighs against personal jurisdiction.

When the Court weighs the above seven factors, it concludes that its exercise of personal jurisdiction over Ipeco is reasonable. Therefore, Ipeco's motion to dismiss is DENIED.

### C. Award of Attorney Fees and Costs

Plaintiffs ask for an award of costs and fees because they believe that Ipeco's motion to dismiss is "entirely frivolous." (*Id*. at 17.) Plaintiffs request is DENIED. As the Court has explained above, Ipeco neither consented to personal jurisdiction, nor was the issue decided by Judge Amon when she transferred venue to this Court. *See supra* Part II.B.1–2. Ipeco properly preserved its motion to dismiss for lack of personal jurisdiction and was within its rights to file such a motion. Moreover, Ipeco's opposition to this Court's personal jurisdiction was timely and well-supported. Ipeco has not acted in a way to multiply the proceedings in this case "unreasonably or vexatiously." *See* 28 U.S.C. § 1927. Ipeco's motion is not, as Plaintiffs state, "entirely frivolous," and sanctions would be entirely inappropriate.

## III. CONCLUSION

For the foregoing reasons, Defendant Ipeco Holdings Ltd.'s motion to Dismiss is DENIED (Dkt. No. 66), and Plaintiffs' motion for attorney fees is DENIED.

DATED this 1st day of February 2018.

John C. Coughenour  
UNITED STATES DISTRICT JUDGE